United States District Court
Southern District of Texas
**ENTERED**
January 03, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

David R. Alvarado,  §
　　　*Plaintiff,*  §
　　　　　　　§
v.  §  Civil Action No. H-18-3594
　　　　　　　§
Nancy A. Berryhill,  §
Acting Commissioner of the Social  §
Security Administration,  §
　　　*Defendant.*  §

# MEMORANDUM AND RECOMMENDATION

Plaintiff David R. Alvarado appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 13) and Defendant's Cross-Motion for Summary Judgment. (D.E. 14.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Alvarado applied for disability insurance benefits on March 9, 2015. (Tr. 267.) Alvarado claimed he became disabled on August 15, 2014, due to osteoarthritis of the hips, degenerative joint disease of both knees, back problems,

and obesity. (Tr. 16, 326.) In his application, Alvarado stated that he was born in 1978. (Tr. 326.) He worked in inventory control and in shipping and receiving. (Tr. 332.) He also worked as an order selector and as a retail stocker. *Id.* The Social Security Administration denied Alvarado's application on April 27, 2015. (Tr. 106–11.) Alvarado appealed on June 9, 2015. (Tr. 114–15.) His application was denied upon reconsideration on August 6, 2015. (Tr. 78–89.) Alvarado requested a hearing.

Administrative Law Judge (ALJ) David R. Gutierrez held a hearing on November 3, 2016, in Houston, Texas. (Tr. 32–41.) The ALJ ordered a consultative examination and held a supplemental hearing on April 4, 2017, in Houston, Texas. (Tr. 42–57.) The ALJ issued a decision on April 24, 2017, finding that Alvarado was not disabled. (Tr. 11–31.) The Appeals Council denied Alvarado's request for review on March 22, 2018. (Tr. 1–6.) Alvarado filed his complaint in federal court on October 4, 2018, to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards
### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

2

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (Listing). If all the

criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Id.* at 461.

**B. Substantial Evidence Standard of Review**

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d

700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearings

Alvarado testified at the hearing on November 3, 2016. (Tr. 32–41.) The ALJ ordered a consultative examination with orthopedic surgeon Frank Barnes to determine if Alvarado met the criteria for a listed impairment. (Tr. 40–41.) At the supplemental hearing on April 4, 2017, the ALJ admitted medical evidence exhibits into the record without objection. (Tr. 44.) The ALJ then heard testimony from Alvarado and a Vocational Expert (VE). (Tr. 43.)

The ALJ questioned Alvarado about his use of a cane, his past and present medical treatment, his work-history, and his daily activities. (Tr. 46–50.) Alvarado testified that he underwent hip replacement surgery in August 2015 and November 2015, following a procedure and rehabilitation for his knee. (Tr. 48–49.) Alvarado also testified that pain medication helped to maintain the pain and that he could walk short distances without the use of his cane. (Tr. 49–50.)

The VE testified about Alvarado's previous jobs. She testified that someone with Alvarado's vocational background and physical limitations could perform sedentary work as a document preparer, a surveillance system monitor, or an order control clerk. (Tr. 53.) The VE gave her estimate of the number of jobs that exist in Texas and in the national economy for each job category. *Id.* The VE testified that Alvarado's need for a cane to ambulate would not impede his ability to perform these jobs. (Tr. 53–54.) The VE's testimony was based on thirty years of experience and did not conflict with the Dictionary of Occupational Titles (DOT). (Tr. 54.)

The ALJ issued his decision on April 24, 2017, finding that Alvarado was not disabled. (Tr. 26.)

### 4. Analysis

#### A. Substantial evidence supports the ALJ's decision.

##### (1) Step One

At step one, the ALJ correctly found that Alvarado had not engaged in substantial gainful activity since the alleged disability onset date of August 15, 2014. (Tr. 16.)

##### (2) Step Two

At step two, the ALJ found that Alvarado had the following severe impairments: osteoarthritis of the hips, degenerative joint disease of both knees, back problems, and obesity. (Tr. 16.)

Review of the record supports this finding, which the parties do not dispute.

(3) Step Three

At step three, the ALJ found that Alvarado's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. The ALJ appropriately considered Listing sections 1.02 (osteoarthritis and degenerative joint disease) and 1.04 (back pain). (Tr. 17.) The ALJ also considered obesity at each step of the evaluation under Social Security Ruling 02-1p, 2000 WL 628049 (Sept. 12, 2002).

Listing section 1.02 requires (a) a gross anatomical deformity and (b) chronic joint pain involving "one major peripheral weight-bearing joint," (c) resulting in the "inability to ambulate effectively, as defined in [Listing section] 1.00B2b." Listing § 1.02 (2017). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." Listing § 1.00(B)(2)(b)(1) (2017) (emphasis added).

Alvarado argues that clear and convincing evidence shows that his impairments met or equaled Listing section 1.02. He argues that the ALJ erred both in his finding and in his failure to explain why he rejected certain evidence. The evidence that Alvarado relies on includes: (a) the ALJ's finding that Alvarado suffered from the dysfunction of two major weight-bearing joints and (b) the ALJ's

finding and medical evidence stating that Alvarado required a cane for effective ambulation. (D.E. 13 at 4–5.)

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Both parties agree that Alvarado suffered from degenerative joint disease of the knees and osteoarthritis of the hips. Both also agree that joint pain involved at least one weight-bearing joint. Therefore, the issue is whether the record reflects an inability to ambulate.

Alvarado argues that he met the definition of ineffective ambulation because evidence shows that he needed a cane to ambulate. He also points to medical treatment notes from February 2015 by Dr. Grzegorz Kurzydlo, which state that Alvarado could not bend or walk more than fifty feet. (Tr. 538.) However, Dr. Kurzydlo's treatment notes preceded Alvarado's total hip replacements in August 2015 and November 2015. (Tr. 48, 777–78, 963–64.) Subsequent medical evidence is inconsistent with Dr. Kurzydlo's findings.

The ALJ relied primarily on June 2016 treatment notes from Dr. Joseph Muscat, which state that Alvarado's motor strength was 5/5 throughout his lower extremities. (Tr. 17, 1037.) Dr. Muscat's notes also indicate that Alvarado ambulated with a normal gait. (Tr. 1028.) This evidence does not indicate that Alvarado's

impairments seriously interfered with his ability to ambulate. *See* Listing § 1.00(B)(2)(b)(1) (2017).

During the 2017 hearing, the ALJ and Alvarado's attorney discussed Dr. Barnes's opinion that Alvarado could not walk a block at a reasonable pace on rough or uneven surfaces. Alvarado's attorney argued that because such inability is listed as an example of ineffective ambulation under Listing § 1.00(B)(2)(b)(1), Alvarado met the Listing and thus was disabled. (Tr. 44–46.) The ALJ gave little weight to Dr. Barnes's opinion about Alvarado's ability to walk a block on rough or uneven surfaces because it was not based on testing. (Tr. 17, 879–90.) Dr. Barnes did not identify the medical findings that supported this opinion despite providing explanation for his other assessments. (Tr. 879–90.)

Evidence in the record also shows that Alvarado often used a cane but there is no indication that this limited the use of both arms. "A single cane is not sufficient, under the regulations, to equal an inability to ambulate." *Maddox v. Colvin*, No. 14-1826, 2015 WL 3826280, at *18 (S.D. Tex. June 18, 2015); *see Weary v. Astrue*, 288 F. App'x 961, 967 (5th Cir. 2008) (determining that "reliance on a single cane does not limit the function of both upper extremities, as would reliance on a walker, two crutches or two canes as required under § 1.00B2b(1)"); *Bullock v. Astrue*, 277 F. App'x 325, 328 (5th Cir. 2007) (concluding that a plaintiff's ability to walk with the use of a single cane, climb stairs with the use of a handrail, and walk two blocks

at a time supports an ALJ's finding that a plaintiff has not shown she is unable to ambulate effectively). Thus, the evidence does not show ineffective ambulation or a disorder of the spine that met a listed impairment.

The court's independent review of the record shows that substantial evidence supports the ALJ's finding at step three.

(4) RFC

Before turning to the final two steps of the analysis, the ALJ determined that Alvarado had the following RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can sit for [six] hours, stand one hour and walk for one hour. The claimant needs a sit/stand option, where he sits for [thirty] minutes and stands to stretch for [five] minutes, but would not leave the work place, during the six-hour period of sitting. The claimant needs an option to ambulate with a cane. The claimant is limited to occasional foot controls, should never climb stairs or ramps; never climb ladders, ropes or scaffolds. The claimant cannot balance, crawl or kneel; and he can occasionally stoop and crouch. The claimant should avoid unprotected heights and moving machinery and should not operate a motor vehicle.

(Tr. 20.)

In reaching this finding, the ALJ considered Alvarado's medical records from 2014 to 2016, his testimony at both hearings, and his statements describing pain. (Tr. 18–23, 32–57, 429–525, 538–88, 766–890, and 1034–1172.)

The medical records show that Alvarado underwent two total hip replacement surgeries in August 2015 and November 2015. (Tr. 783, 969.) By March 2016, Alvarado told his treating physician, Dr. Korthauer, that he had no pain. (Tr. 1022.)

10

Dr. Korthauer noted that Alvarado had "good motion" and could "bend far." (Tr. 1024.) By June 2016, Dr. Muscat's examination revealed that Alvarado walked with a normal gait. (Tr. 1028.) His motor strength was 5/5 throughout his lower extremities. (Tr. 1037.) Although Alvarado did report some knee pain, he told Dr. Muscat that this was alleviated with over-the-counter medication and rest. (Tr. 1027.)

The ALJ considered medical expert opinions from Dr. Barnes and the State agency medical consultants' assessments. (Tr. 20–23.) Dr. Barnes noted that Alvarado was able to walk a few steps without a cane and that he had limited range of motion in his lumbar spine. (Tr. 20, 881, 886.) He assessed Alvarado's physical RFC and stated that Alvarado could intermittently stand for one hour each day, walk with a cane for one hour each day, and sit up to six hours each day. (Tr. 881, 886.) His findings indicate that Alvarado had full use and mobility of both hands and that he could occasionally operate foot controls. (Tr. 887.) Dr. Barnes opined that Alvarado could occasionally lift or carry up to ten pounds and could climb stairs. (Tr. 22, 885–89.) Dr. Barnes's statements about Alvarado's limitations—that he could never balance, kneel, crawl, climb ladders, operate motor vehicles or moving mechanical parts—were also considered. *Id.* The ALJ gave the state agency medical consultants' assessments some weight to the extent that they were consistent with the RFC determination but explained that their assessments were based on a small

amount of treatment records and no physical examination. (Tr. 22–23, 67–74, 78–89.)

The ALJ also considered Alvarado's testimony regarding his pain, fatigue, and the effects of Alvarado's prescribed medication. (Tr. 23.) The ALJ agreed that Alvarado's impairments could reasonably be expected to cause pain but found Alvarado's testimony regarding the intensity, persistence, and limiting effects to be inconsistent with the evidence in the record. (Tr. 21.) The ALJ compared Alvarado's testimony to medical records from treating doctors Ken Korthauer and Joseph Muscat from Fondren Orthopedic Group and Tyreen Heybeck from Town Center Foot and Ankle. (Tr. 21–22.) On several occasions, all three noted that Alvarado reported little to no pain or manageable pain. (Tr. 492, 556, 785, 853, 855, 858, 873.) The ALJ found that in September 2016, Alvarado denied having joint pain, knee pain, neck pain, back problems, weakness, and joint stiffness. (Tr. 22, 873.) The ALJ acknowledged Alvarado's claims of knee pain but noted that medical records showed improvement following surgery and physical therapy. (Tr. 21, 492.) The ALJ noted similar pain relief in Alvarado's back following therapeutic injections. (Tr. 22, 551, 553, 556.) Alvarado also testified that he could only work about three or four hours, while Dr. Barnes opined that he could sit for six hours of an eight-hour workday. (Tr. 51, 886.) The ALJ thus considered Alvarado's pain but

determined that the medical evidence did not support his testimony regarding the intensity and source of his pain. (Tr. 22.)

Substantial evidence supports the ALJ's RFC determination.

### (5) Step Four

At step four, the ALJ relied on the VE's testimony and found that Alvarado could not perform any past relevant work. (Tr. 23, 52–54.) Substantial evidence supports the ALJ's finding at step four, which neither party disputes.

### (6) Step Five

At step five, the ALJ found that Alvarado could find employment in jobs that exist in significant numbers in the national economy. (Tr. 23–25.) To support this determination, the ALJ considered Alvarado's age, education, work experience, and RFC. (Tr. 24.) The ALJ also relied on the VE's testimony and thirty years of experience in the field. (Tr. 25.)

The VE testified that a person of Alvarado's vocational background and RFC would be able to perform work as a document preparer, a surveillance system monitor, or an order control clerk. (Tr. 24, 53.) The VE testified that the mobility issues described in the record would not prohibit performance in these sedentary occupations. (Tr. 53–54.) Pursuant to Social Security Ruling 00–4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ determined that the VE's testimony was consistent with information contained in the DOT. (Tr. 25.) The DOT is a reliable source of information of which the Commissioner may take judicial notice. *See* 20 CFR

§§ 404.1566(d)(1), 416.966(d)(1) (2017). The VE based her opinions on her thirty years of experience placing individuals with similar limitations into similar jobs. (Tr. 25.)

Substantial evidence supports the ALJ's step-five finding.

### B. Alvarado's arguments

(1) The ALJ properly fulfilled his duty to develop the record.

Alvarado argues that the ALJ failed to obtain a medical expert opinion to determine Alvarado's RFC and whether Alvarado's impairments were equal to a Listing. Alvarado claims that if the ALJ had consulted a medical expert, his decision would have been different or at least "more logically defensible." (D.E. 13 at 6.)

A claimant's RFC and whether a claimant's impairments meet or equal a Listing are determinations reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2) (2017). "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). A court can only reverse the ALJ's decision if the claimant shows that the ALJ failed to fulfill his duty and that this failure prejudiced the claimant. *Id.* "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* Mere assertions that a claimant was prejudiced are insufficient to meet the claimant's burden. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

14

In his decision, the ALJ considered the medical opinions of Alvarado's treating physicians, Dr. Barnes, and the State agency consulting physicians. (Tr. 17–22.) The determination properly identifies the medical evidence that the ALJ relied on, as described above in Part 4(A)(3), and the RFC essentially reiterates Dr. Barnes's findings. (Tr. 18, 880–90.)

The ALJ fulfilled his duty to obtain a medical expert. At Alvarado's first hearing in 2016, the ALJ recognized the need for an expert opinion and sent Alvarado to Dr. Barnes for a consultative examination. (Tr. 40–41.) The ALJ explained to Alvarado that the purpose of the examination was to get a medical explanation as to whether or not Alvarado's impairments met or equaled a listing. (Tr. 41.) The ALJ explained that a supplemental hearing would be scheduled to review Dr. Barnes's findings regarding disability. *Id.* Dr. Barnes's findings were admitted into the record at the 2017 supplemental hearing. (Tr. 44.) Alvarado's attorney did not object. *Id.*

Alvarado does not explain what another expert would have added or how further development would have altered the result. He has not shown that he was prejudiced in any way. Because Alvarado has not shown the prejudicial effect of an unfulfilled duty, the court finds no reversible error.

(2) The ALJ properly considered Alvarado's pain in the RFC determination.

Alvarado argues that the RFC determination failed to consider his pain and its effects on his ability to work.

In determining how pain affects the ability to perform work, an ALJ considers a claimant's statements and history, the objective medical evidence, and medical source statements. 20 C.F.R. § 404.1529(c)(4) (2017). "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Johnson*, 864 F.2d at 347. A claimant's description of pain is not conclusive and must be reasonably consistent with the medical evidence of the record. *Zuniga v. Astrue*, No. H-07-3358, 2009 WL 2488124, at *10 (S.D. Tex. Aug. 7, 2009).

The ALJ's determination of the RFC carefully considered the effects of Alvarado's pain as shown in the record and discussed above in Part 4(A)(4). (Tr. 18–22.)

Alvarado also contends that the ALJ improperly determined that Alvarado's statements about his symptoms were not credible. He claims that the ALJ's analysis is conclusory and unrelated to specific findings or evidence in the record. The court disagrees.

To determine the RFC, the ALJ must consider a claimant's statements about his symptoms along with his prior work record, evidence submitted by medical

sources, and observations described in the record. 20 C.F.R. § 404.1529(c)(3) (2017). To gauge the severity of described symptoms, the ALJ will consider several factors such as a claimant's daily activities and the effectiveness of medication and other treatment. *Id.* "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, "[t]he ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination." *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

As discussed above in Part 4(A)(4), the ALJ noted inconsistencies between Alvarado's testimony and the medical records of several treating physicians. (Tr. 22–23.) The ALJ gave Alvarado's testimony some weight to the extent that it was consistent with the RFC and expressly articulated the discrepancies he considered. (Tr. 22–23.) Therefore, the ALJ properly evaluated the facts under the proper legal framework.

> (3) A separate finding on Alvarado's ability to maintain employment was not required.

Alvarado contends that the ALJ was required to consider whether he could both obtain and maintain employment. According to Alvarado, the ALJ only

considered whether Alvarado could have obtained employment. Alvarado argues that a separate finding on whether he could also maintain employment was required.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). Thus, the RFC assessment generally encompasses both the ability to obtain work and the ability to maintain work on a regular and continuing basis. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Separate findings are required only in cases where the facts and evidence suggest that "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* at 621 (surmising that if a claimant alleged that "her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs," a separate maintenance finding would be necessary); *see Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990) (determining that the medical evidence of a claimant's frequent exacerbations of Crohn's disease supports a separate finding that the claimant could also maintain work). "Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Perez*, 415 F.3d at 465.

Alvarado does not cite to any evidence in the record to suggest that his impairments waxed and waned in severity or frequency. Throughout the record,

Alvarado claimed that he could not work at all. *Cf. Frank*, 326 F.3d at 621 (noting that separate findings are not required when a claimant does not suggest a difference between his ability to work and his ability to sustain work); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (concluding that a separate finding is not needed "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter"). The court finds no evidence in the record to suggest that a separate finding was necessary.

        (4) The disability determination properly addressed the implications and limitations of using a cane while working.

Alvarado asserts that at step five the ALJ failed to address how his use of a cane would affect his ability to lift or carry while performing work-related duties.

An ALJ's determination must account for relevant limitations that may erode the occupational base based on the particular facts of the case. SSR 96-9P, 1996 WL 374185, at *6–7 (July 2, 1996). Because the DOT is not comprehensive, if a claimant suffers from additional limitations, the ALJ must rely on a VE's testimony or similar evidence. *Carey v. Apfel*, 230 F.3d 131, 144 (5th Cir. 2000). A person needing a cane to reduce pain when walking, for example, may still have the ability to perform the minimal lifting or carrying requirements of many unskilled sedentary occupations. *Id.*; *see Montgomery v. Colvin*, No. 4:12-CV-574-Y, 2013 WL 5314410, at *11 (S.D. Tex. Sept. 20, 2013) (finding no error in a determination that a claimant's use of a cane to help with pain, not balance, does not limit his ability to

perform particular sedentary work described by a VE with knowledge of limitations).

The RFC includes a limitation for cane use. The ALJ's decision acknowledges the VE's testimony that the use of a cane would not significantly erode the occupational base. (Tr. 24, 54.) The decision states that the jobs considered were indoor and did not require ambulation over uneven ground. *Id.* At the hearing, the VE testified that although Alvarado needed a cane to ambulate, he could still do the proposed jobs. (Tr. 53–54.) The VE's testimony was based on her thirty years of experience. (Tr. 54.) It was also consistent with the DOT. *Id.* The ALJ was entitled to rely on the VE's testimony. *See Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (finding that a VE's clear and unchallenged testimony that the claimant could perform the proposed light, unskilled work despite dexterity limitations supported the ALJ's determination based on the VE's experience).

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each of the five sequential steps. The ALJ's decision denying social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court

recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January 3 , 2020.

_____
Peter Bray
United States Magistrate Judge